HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OZONE INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WHEATSHEAF GROUP US, INC., a Delaware corporation, BROMLEY BEADLE, JAMES YOUNG, ANTHONY JAMES, and SYLVIO PETTO NETO, <br><br> Defendants. | CASE NO. C19-6155RBL <br><br> ORDER |

THIS MATTER is before the Court on Defendants' Motion to Dismiss or Stay Pending Decision in Related Lawsuit [Dkt. #12]. The Court has reviewed the materials filed in this action and the materials filed in the closely-related case, Cause No. C19-1108RAJ, because each case has its genesis in the same bundle of facts. Oral argument is not necessary. For the following reasons, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The Motion to Stay is **DENIED** as moot. On the Court's own motion, this case will be transferred to Judge Richard A. Jones of the Seattle Division for further management of both cases.

ORDER - 1

# I. PROCEDURAL HISTORY

**A.  *Ozone I* (Cause No. C19-1108RAJ).**

In July 2019, Ozone International sued Wheatsheaf Group Ltd (Wheatsheaf)[1] for breach of contract in U.S. District Court for the Western Washington in Seattle. The parties' Asset Purchase Agreement (APA) provides jurisdiction and venue in federal or state courts located in Seattle. The APA reflects and governs Wheatsheaf's agreement to purchase Ozone's assets through U.S. subsidiaries. Ozone also asserted Fraud, Negligence Misrepresentation and Declaratory Judgment claims. It alleges that declaring that Wheatsheaf's subsidiaries, Wheatsheaf Group US Inc. (WGUS) (incorporated in Delaware and headquartered in Minnesota) and Wheatsheaf Group US Food Safety LLC d/b/a TriStrata (TriStrata) (incorporated in Delaware and based in Washington) are dominated and controlled by Wheatsheaf.

Ozone simultaneously filed a Motion for Temporary Restraining Order [Dkt. #3], which Judge Jones promptly denied. [Dkt. #13]. On September 9, 2019 Wheatsheaf filed a Motion for Partial Summary Judgment [Dkt. #21], and on October 17, 2019 it moved to stay discovery pending resolution of its Summary Judgment motion. [Dkt. #30]. Judge Jones denied Wheatsheaf's Motion for Partial Summary Judgment without prejudice [Dkt. #37 – May 6, 2020] and granted Ozone's Rule 56(d) request for additional discovery. He denied Wheatsheaf's motion to stay discovery as moot. The parties are now presumably mapping out future discovery in that case.

---

[1] The Court has endeavored to use common-sense, consistent shorthand names for the players in the two cases. That effort is hampered by the fact that some names are similar and the fact the parties have used differing shorthand names. "Wheatsheaf" is the UK parent. "WGUS" is Wheatsheaf's Minnesota-based U.S. subsidiary, and "Tri-Strata" is the WGUS subsidiary that purchased both Ozone and Purfresh.

**B.  *Ozone II* (Cause No. 19-6155RBL).**

On November 27, 2019, Ozone commenced this action against WGUS and four TriStrata officers or Directors. Ozone is incorporated in Washington and headquartered on Bainbridge Island, Kitsap County, Washington. The Complaint was filed in the Seattle Division of the District of Western Washington. Ozone failed to inform the Court of the case's connection to *Ozone I*, a case to which it is clearly related. The Seattle Clerk opening the case recognized that Ozone had selected the incorrect divisional office; cases arising in Kitsap County are properly assigned to the Tacoma Division. And, because there was no indication that there was a related case in Seattle, the clerk's office redirected *Ozone II* to this judge.

Ozone invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332(a). Ozone is domiciled Washington and WGUS is domiciled in Minnesota. The individual defendants—Bromley Beadle, James Young, Anthony James, and Sylvio Neto (TriStrata's officers and Directors)—are citizens of California, Arkansas, United Kingdom, and Minnesota. Ozone alleges violations of the Uniform Voidable Transfers Act (RCW 19.40.041(1)(a), 19.40.051(1), and 19.40.051(2)) and Breach of Fiduciary Duties. The claims in this second case do not directly arise out of a contract to which Ozone is a party.

## II. FACTS

**A.  *Ozone I*.**

The facts of *Ozone I* are taken verbatim from Judge Jones' decision denying the Defendants' Motion for Summary Judgment [Dkt. #37 in that case]:

Plaintiff, Ozone International, LLC (Ozone) is a Washington-based company that developed an ozone machine that significantly extends the shelf life of food and beverage products. Dkt. # 4 at ¶ 1. In 2016, Ozone began discussions with Defendant, Wheatsheaf Group Ltd. ("Wheatsheaf"), a private limited company based in the United Kingdom, regarding

Wheatsheaf's potential acquisition of Ozone. *Id.* at ¶ 3. For the purposes of facilitating the deal, Wheatsheaf created two subsidiaries: Wheatsheaf Group US Inc. ("WGUS"), a Delaware corporation with a principal place of business in Minnesota, and Wheatsheaf Group US Food Safety LLC d/b/a TriStrata ("TriStrata"), a Delaware limited liability corporation based in Washington. Dkt. # 4, Ex. F.

On August 17, 2017, Ozone entered into an Asset Purchase Agreement ("APA") with TriStrata whereby TriStrata acquired a substantial number of Ozone's assets, excluding certain contracts ("the Excluded Contracts") which Ozone retained ownership over. Dkt. #1-1, Ex. A. Wheatsheaf (TriStrata's parent company) was also a party to the APA "solely for the purposes of Section 6.05 and any provisions of Article I, Article IX, and Article XI as they relate to Section 6.05." *Id.* Section 6.05 provides: "Buyer has sufficient cash on hand or other sources of immediately available funds to enable Buyer to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement." *Id.* Later in Section 6.07 of the APA, TriStrata represented that it would "be able to pay its debts as they become due" and that "[i]n connection with the transactions contemplated hereby, Buyer has not incurred, and has no plans to incur, debts beyond its ability to pay as they become absolute and matured." *Id.*

In addition to the APA, TriStrata and Ozone also entered into a Transition Services Agreement ("TSA"), providing for the transition of Ozone's business to TriStrata over a period of time. Dkt. #1-1, Ex. B. Under Section 3.04 of the TSA, TriStrata agreed to pay a "Transfer Price" for any Excluded Contract where the customer entered into a new contract with TriStrata. Dkt. #1-1, Ex. B. The parties also agreed to cooperate in good faith to set a Transfer Price for the contracts. *Id.* Customer contracts began to transfer from Ozone to TriStrata in January 2018 and since then 25 contracts have transferred to TriStrata. Dkt. # 26 at ¶ 1. However, the parties have

not yet negotiated a final Transfer Price for any of the contracts and TriStrata has not paid for any of the contracts. *Id.*

During the transfer process, TriStrata also agreed to service the Excluded Contracts and, in exchange, Ozone agreed to pay TriStrata a service fee. Dkt. #1-1, Ex. B, § 4.02. The total purchase price ($9.9 million) included a $1.5 million reserve to allow Ozone to pay TriStrata for its continued servicing of the Excluded Contracts under the TSA. Dkt. # 11 at ¶ 12. Ozone maintains that the parties understood that the funds for Ozone to continue operating would come from the Transfer Price payments. Dkt. # 26 at ¶ 1. Following the close of the deal, Wheatsheaf routinely invoiced Ozone for services provided under the TSA, however, after Ozone exhausted the $1.5 million reserve, it stopped paying the invoiced amounts. Dkt. # 11 at ¶ 14. According to Ozone, this is because TriStrata has not paid Ozone any of the Transfer Price payments it owes for the 25 transferred contracts and it has been forced to offset this amount under Section 4.07 of the TSA. Dkt. # 26 at ¶ 1.

On March 29, 2019 TriStrata sued Ozone in King County Superior Court alleging breach of contract and requesting a declaratory judgment excusing TriStrata from further performance under the TSA due to Ozone's "material breach." Dkt. # 26 at ¶ 4. Two months later, on May 31, 2019, TriStrata filed a petition for receivership in King County Superior Court. Dkt. # 26 at ¶ 6. On July 17, 2019, Ozone filed the instant complaint (Dkt. #1) alleging claims for breach of contract, fraud, negligent representation, and requesting declaratory judgment that Wheatsheaf is an alter ego of TriStrata, along with a motion for a temporary restraining order ("TRO") and preliminary injunction (Dkt. # 3).

**B.  *Ozone II*.**

This second case stems, in part, from the 2017 APA, under which a Wheatsheaf subsidiary, TriStrata acquired some of Ozone's assets. Under the APA, TriStrata was to service

some of Ozone's pre-existing customer contracts, and Ozone was to pay TriStrata for doing so. TriStrata was also obligated to pay Ozone for the assets (including other customer contracts) it purchased.

In January 2019, TriStrata purchased 90% of the assets of Purfresh, California company which, like TriStrata, focuses on sustainable food production and preservation. This purchase was memorialized in a contract, the Unit Pledge Agreement, between WGUS, TriStrata, and Purfresh, pursuant to which WGUS had the right to compel TriStrata to sell its stake in Purfresh through a call option. In May 2019, WGUS exercised its call option and purchased TriStrata's stake in Purfresh (the "Transfer"). Because the Transfer was made subject to WGUS's call option, TriStrata had no say in the matter.

This Transfer is the subject of Ozone's claims. Ozone claims that the Transfer to WGUS is voidable under various sections of Washington's Uniform Voidable Transfer Act (UVTA), Chapter 19.40 RCW. It also claims that TriStrata's officers and Directors are liable for breaching their fiduciary duties to Ozone.

Purfresh specializes in technology to enhance safety for food during transport. On January 1, 2019, TriStrata purchased 90% of Purfresh's assets. This purchase occurred pursuant to a contract between Purfresh, TriStrata, and WGUS. The contract gives WGUS the right to cause TriStrata to sell all the Collateral to WGUS. Collateral is defined as including all of the Pledgor's [TriStrata's] Equity Interests of the Company [Purfresh]. Thus, under the Unit Pledge Agreement, TriStrata and WGUS agreed that WGUS had the unilateral right to purchase—or "call"—Purfresh's assets from TriStrata.

On May 14, 2019, WGUS made the decision to exercise its call right pursuant to the Unit Pledge Agreement, whereby WGUS purchased TriStrata's interest in Purfresh in exchange for

forgiveness of a note that WGUS had loaned TriStrata to finance the original Purfresh asset purchase.

Separately, on May 31, 2019, after experiencing continuous financial difficulty, the TriStrata's Officers placed the company into a court-administered receivership. Ozone claims that this series of maneuvers caused damage to Ozone by stripping TriStrata's ability to pay it transfer fees owed under the APA.

### III. ANALYSIS

The defendants raise several points of disagreement with the basis and the means of this litigation. They challenge the Court's jurisdiction over them, question the viability of Ozone's claim that they owed it any fiduciary duty, and raise miscellaneous nits over Ozone's unspecified averment of fraud. The Court will deal with these deficiencies seriatim.

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445,448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**A. Personal Jurisdiction.**

 1. General Jurisdiction

A court has general jurisdiction over a corporation when the forum state is either the state of incorporation or in the state where the corporation has its principal place of business. *Ralls v. Facebook*, 221 F. Supp.3d 1237, 1242 (W.D. Wash. 2016) (general jurisdiction exists over a corporation when its contacts with the forum state are "continuous and systematic" enough to render it at home, and "[a] corporation will be subject to general jurisdiction in another state only in an exceptional case") (internal citations omitted). Here, WGUS is a Delaware corporation with its principal place of business in Minnesota. Ozone has not pled any facts to suggest general

1  jurisdiction would nonetheless be appropriate in Washington, nor can it. This Court thus lacks
2  general jurisdiction over WGUS based on its domicile.

3      2. <u>Specific Jurisdiction.</u>

4      "The inquiry whether a forum State may assert specific jurisdiction over a nonresident
5  defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"
6  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden
7  v. Fiore*, 571 U.S. 277, 283-84 (2014). Two principles guide this inquiry: First, this relationship
8  must arise from contacts that the "defendant *himself*" creates with the forum state. *Walden*, 571
9  U.S. 284 (emphasis in original). In other words, plaintiffs' or third parties' contacts with the
10 forum state cannot be the basis for jurisdiction over the defendant. *Id*. This is because due
11 process in this context "principally protect[s] the liberty of the nonresident defendant—not the
12 convenience of plaintiffs or third parties." *Id*. Second, the "minimum contacts' analysis looks to
13 the defendant's contacts with the forum State itself, not the defendant's contacts with persons
14 who reside there." *Id*. at 285. Put simply, "the plaintiff cannot be the only link between the
15 defendant and the forum." *Id*. Moreover, "random, fortuitous, or attenuated" contacts with a
16 forum state are insufficient for specific jurisdiction. *Id*. at 286 (quoting *Burger King Corp. v.
17 Rudzewicz*, 471 U.S. 462, 475 (1985)).

18     The Ninth Circuit applies a three-part test to determine whether the exercise of specific
19 jurisdiction over a nonresident defendant is appropriate: (1) the defendant has either purposefully
20 directed his activities toward the forum or purposely availed himself of the privileges of
21 conducting activities in the forum; (2) the claims arise out of the defendant's forum-related
22 activities; and (3) exercise of jurisdiction is reasonable. *Axiom*, 874 F.3d at 1068. Plaintiffs bear
23 the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374

24

1  F.3d 797, 802 (9th Cir. 2004). The burden then shifts to defendant to make a "compelling case"

2  that the exercise of jurisdiction would not be reasonable. *Id*.

3        Where, as here, the case sounds in tort, the court considers for part one of the above-

4  stated test whether the defendant has purposefully directed his activities at the forum state, even

5  if the acts took place elsewhere. *Axiom*, 874 F.3d at 1069. To meet this threshold, the defendant

6  must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

7  harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo Inc. v.*

8  *Brand Techs.*, 647 F.3d 1218, 1228 (9th Cir. 2011).

9        The parties do not dispute that the Transfer was an intentional act. Therefore, the first

10  prong is met.

11        The heart of the analysis is at prong two: whether WGUS expressly aimed its Transfer-

12  related conduct at Washington. Contrary to WGUS's portrayal, the Court's analysis is not strictly

13  confined to the Transfer—the final step in a Washington-based scheme. Rather, the Court should

14  consider all WGUS's Transfer-related conduct, without which Ozone's claims would not have

15  arisen. *See Lee v. City of L.A.*, 250 F.3d, 668 at 694-95 (9th Cir. 2001) (explaining that courts

16  should consider whether, "but for the alleged contacts between the defendants and California,

17  [plaintiff's] claims would not have arisen."). The relevant contacts, as alleged, include the

18  following: In 2017, WGUS and TriStrata were created for the sole purpose of acquiring Ozone's

19  Washington-based business, with TriStrata registered, headquartered, and acting as a successor

20  to Ozone in Washington, and WGUS operating with a single employee as TriStrata's controlling

21  owner and shell lender. WGUS thereafter financed TriStrata's operations in Washington for over

22  two years, through the Receivership. In TriStrata's Receivership, WGUS confirmed that

23  TriStrata was insolvent.  In January 2019, TriStrata—under the direct and complete control of

24

WGUS—executed the Unit Pledge Agreement and the Note to acquire the Asset. The Unit Pledge Agreement also contained the Call Right, purportedly giving WGUS the ability to strip the Asset from TriStrata at any time. Just four months after the acquisition, on May 14, 2019, WGUS exercised its Call Right, causing TriStrata to "sell" the Asset (Purfresh) to WGUS for no monetary consideration other than forgiveness of an alleged debt. Two weeks later, the Defendants caused TriStrata to voluntarily commence an assignment for benefit of creditors and liquidating Receivership in Washington.

Ozone argues all these actions are expressly aimed at Washington; nothing about these contacts are "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475. There is no doubt that "but for" WGUS's Washington-related activities, Ozone's causes of action would not have arisen. *Lee*, 250 F3d at 694-95.

Moving to prong three, Ozone claims WGUS caused harm that it knew was "likely to be suffered in the forum state." *Mavrix*, 647 F.3d 1218, 1227-18. As TriStrata's controlling owner and lender, WGUS knew that TriStrata was insolvent and indebted to Ozone under the TSA. WGUS used a Washington Receivership to liquidate its subsidiary and to adjudicate Ozone's claims against TriStrata through that Receivership.  WGUS should have known that stripping assets from TriStrata would cause its financial condition to further deteriorate, increasing the likelihood of harm to Ozone's ability to collect against TriStrata.

The Court will accept Ozone's representations for now. The Motion to Dismiss for lack of specific personal jurisdiction is **DENIED without prejudice**.

**B. Individual Defendants – Breach of Fiduciary Duty.**

Ozone impermissibly brings a derivative action against the Officers. For a party to bring a derivative action on behalf of a corporation or unincorporated association, the party (1) must be a "shareholder [] or member []" of the company, and (2) must first make a demand on the directors

to take necessary action or *plead "with particularity"* why such demand would be futile. Fed. R. Civ. P. 23.1. *See also* RCW 23B.07.400 (requiring the party bringing a derivative action be a shareholder of the corporation and plead with particularity why demand would be futile).

A corporation's creditor has no standing to bring a derivative action. *See, e.g.*, *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash.2d 107, 149 (1987) (citing *Dodge v. First Wisc. Tr. Co., N.E.*, 394 F. Supp. 1124, 1127 (E.D. Wisc. 1975)) (holding plaintiffs and intervenors had no right to bring a derivative claim because they were only creditors). *See also Darrow v. Southdown, Inc.*, 574 F.2d 1333 (5th Cir. 1978); *Dodge*, 394 F. Supp. 1124; *Brooks v. Weiser*, 57 F.R.D. 491 (S.D.N.Y. 1972). "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1.

Ozone seeks judgment against the Officers on behalf of TriStrata, rendering its breach of fiduciary duty claim a purely derivative one. But Ozone has not asserted any facts whatsoever to suggest it is a shareholder or member of TriStrata. Nor can it, for Ozone is neither. Quite the opposite, Ozone has asserted only that it is a creditor of TriStrata. ("At all times relevant hereto, TriStrata was indebted to Plaintiff."). Under clearly established federal and state law, Ozone thus has no standing to bring a derivative action because Ozone is a creditor and not a shareholder or member.

Ozone argues that the Officers owed direct fiduciary duties to Ozone, contrary to the principal that an entity's directors do not owe fiduciary duties to the entity's creditors. *Hamer Elec., Inc. v. TMBNW Liquidation, LLC*, 2015 WL 630569, at *10 (W.D. Wash. Feb. 13, 2015) (Leighton, J.) ("Washington law does not recognize a direct duty of a corporate official to a

creditor. As a result, [the officer of the debtor] did not owe a direct fiduciary duty to [the creditors].").

Ozone argues that the "trust fund doctrine"—a common law rule that was abrogated nearly 100 years ago—should be revived by this Court. The trust fund doctrine was developed prior to Washington codifying statutes for receivership and creditors' rights. It provides that corporate officers and directors owe a fiduciary duty to creditors once the corporation becomes insolvent. Ozone claims that the trust fund doctrine started as a common law theory, was codified by the Washington legislature in 1931, and then repealed in 2004.

The statute that was repealed in 2004 (RCW 23.72.030) and in turn replaced by the Receivership Statute (RCW 7.60.005–.300)—along with RCW Chapter 19.40—which sets forth the procedures for creditors to assert claims and protect their rights. Indeed, Ozone took advantage of precisely those statutes in the receivership case, and it has asserted Chapter 19.40 RCW claims in this case. In other words, even though Ozone has ample statutory remedies to protect any meritorious claims it might have as a creditor, it asks the Court to revive a common law doctrine that was long since abrogated by those very same statutes.

In support of its assertion that the trust fund doctrine is still "viable" under Washington law, Ozone relies primarily upon two cases: *GMAC, LLC v. Hiatt Pontiac GMC Trucks, Inc.*, 2009WL 4730838 (W.D. Wash. Dec. 7, 2009), and *In re Underwood*, 2004 WL 5607954 (Bankr. E.D. Wash. Apr. 14, 2004). Contrary to Ozone's assertion, however, neither of those decisions determined that the trust fund doctrine was viable. More importantly, a subsequent decision issued by the Bankruptcy Court for the Western District—*In re McMahon-Jones*, 461 B.R. 835, 847 (Bankr. W.D. Wash. 2011)—has made such a determination and concluded that the trust

fund doctrine has not been "reinstated" under Washington law, and has instead been abrogated by the Washington legislature.

The Court agrees with and adopts *In re McMahon-Jones's* analysis. The Individual Defendants' Motion to Dismiss is **GRANTED** and Ozone's breach of fiduciary duty claims against them are **DISMISSED with prejudice**.

**C. State Fraud Claims (RCW 19.40.041, 19.40.051(1), 19.40.051(2)).**

Federal Rule of Civil Procedure 9(b) raises the standard by which a plaintiff must plead claims sounding in fraud. Rule 9(b) "requires that all averments of fraud must be made with particularity." *Tomek v. Apple Inc.* 636 Fed.Appx. 712, 713 (9th Cir. 2016), *see also* Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when where, and how of the misconduct charged." *Id*. (internal quotations omitted).

Specifically, regarding RCW 19.40.041(1)(b) and .051, Ozone's Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court must draw all reasonable inferences in favor of the non-moving party, Ozone's "factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the pleading is not sufficient "if it tenders 'naked assertions' devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Apart from the fact that Ozone chose not to assert this claim during receivership, Ozone now merely recites the elements of the statutes without providing "sufficient factual matter" as to how they are applicable here. Accordingly, these claims fail under Rule 12(b)(6).

These statutory claims are **DISMISSED without prejudice**. Leave to Amend is **GRANTED** to provide the opportunity to plead claims according to Fed. R. Civ. P. 9(b).

## IV. CONCLUSION

Defendants' Motion to Dismiss for Lack of Jurisdiction [Dkt. #12] is **DENIED without prejudice**. The Motion to Dismiss the claims against the individual defendants for breach of fiduciary duty is **GRANTED** and Ozone's claims against those individual defendants are **DISMISSED with prejudice**. The Motion to Dismiss the Fraud Claims is **GRANTED,** and the Court **GRANTS** leave to amend the Complaint within 14 days of this Order.

Finally, because this case is related to *Ozone I,* the clerk shall **TRANSFER** it to Judge Richard A. Jones of the Seattle Division of the Western District of Washington.

IT IS SO ORDERED.

Dated this 27th day of May, 2020.

Ronald B. Leighton
United States District Judge